**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.:  25-62142-CIV -DIMITROULEAS**

**IMMANUEL FRAZIER,**                               **Magistrate Judge Hunt**

   **Plaintiff,**

**vs.**

**LOCKHART, MORRIS &**
**MONTGOMERY, INC.,** *et al.,*

   **Defendants.,**

_____/

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES
## WITH JURY DEMAND

1.     Plaintiff, IMMANUEL FRAZIER ("Plaintiff" or "Mr. Frazier"), files this First Amended Complaint for damages with a demand for a jury trial pursuant against Defendant, LOCKHART, MORRIS & MONTGOMERY, INC. for violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681 *et seq.,* the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

2.     Plaintiff's previous allegations of FCRA violations against previous Defendants EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, and EQUIFAX INFORMATION SERVICES, INC have all been dismissed with prejudice.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.     Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

5. This Court has supplemental jurisdiction to hear all state law claims that are pleaded herein or that may subsequently arise pursuant to 28 U.S.C. § 1367

## **PARTIES**

6. Plaintiff is a natural person who, always relevant to this action is and was a resident of Broward County, Florida and is a "consumer" as defined by 15 U.S.C. §1692a(3).

7. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

8. Plaintiff is a "consumer" as defined by Florida Statute §559.55(8).

9. Defendant, LOCKHART, MORRIS & MONTGOMERY, INC. is authorized to do business in the state of Florida with a registered agent listed as Registered Agent Solutions, Inc., 1200 South Pine Island Road, Plantation, FL 33324.

10. Defendant, LOCKHART, MORRIS & MONTGOMERY, INC. ("Lockhart Morris") uses instrumentalities of interstate commerce in a business the principal purpose of which is the collection of debts.

11. These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications used to contact consumers within the state of Florida, or third parties who receive information regarding these consumers' accounts.

12. Lockhart Morris is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) and Florida Statute §559.55(7).

13. Experian Information Solutions, Inc. ("Experian") is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

14.     Transunion LLC ("Trans Union") is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

15.     Equifax Information Services, LLC is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

16.     Experian, Equifax, and Trans Union shall be collectively referred to as the "Credit Reporting Agencies" or the "CRAs."

## FACTUAL ALLEGATIONS

17.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.,* was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

18.     Congress found that "[i]nnacurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. §1681(a)(1).

19.     "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know

when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

20.    A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. 15 U.S.C. §1681s-2.

21.    "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. *See also Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295, 1302 (11th Cir. 2016).

22.    The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1691n.

23.    If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

24.    Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:
>
> i.    credit or insurance to be used primarily for personal, family, or household purposes;
>
> ii.    employment purposes; or
>
> iii.    any other purpose authorized under section 1681b of this

title.

15 U.S.C. § 1681a(d)(1).

25.     The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

*National CRAs and Furnishers Communicate Consumer Disputes and Responses via the E-Oscar Reporting Platform*

26.     The FCRA requires Credit Reporting Agencies ("CRAs") to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

27.     To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian (the three major "National CRAs"), along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

28.     The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. *See* http://www.e-oscar.org/ (last accessed October 21, 2025).

29.     The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. *Id*.

30.     The National CRAs, provide notice of a consumer's dispute to data furnishers in the ACDV format, and forward the ACDV to the furnisher through e-OSCAR.

5

31.     If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

32.     The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. *See* https://www.e-oscar.org/gettingstarted *(*last accessed October 21, 2025).

33.     Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

34.     Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." *See*, https://www.transunion.com/data-reporting/support-teams (last accessed October 21, 2025).

35.     Plaintiff's dispute with Defendants revolves around the reporting of a $2,500 debt on all his credit reports.  The reporting is tied to his job application to be a truck driver with Western Express, Inc., which lasted approximately thirty days because Plaintiff became physically unable to drive without an accommodation.

36.     Western Express, Inc. informed Plaintiff him they would not accommodate his condition and he should seek employment elsewhere.

37.     After Plaintiff's brief period of employment, Lockhart Morris began reporting a $2,500 debt on his credit files.

38.     As a result, on May 28, 2024, Mr. Frazier submitted written disputes to Trans Union, Equifax, and Experian ("Credit Reporting Agencies" or "CRAs") as required by the FCRA, who then forwarded the dispute to Lockhart Morris. ("Initial Disputes").

39.     A redacted copy of the Initial Disputes is attached hereto as part of Composite Exhibit "A."

40.     In the Initial Disputes, Mr. Frazier provided a doctor's note stating he was unable to work due to his physical condition. *See* Exhibit "A."

41.     After the Initial Disputes were sent to the CRAs and then forwarded to Lockhart Morris, Mr. Frazier reviewed his credit reports and saw the disputed account was still being reported as a collection account, and past due in the amount of $2,500.

42.     As a result, Mr. Frazier sent a second dispute to the CRAs on August 13, 2024, which was also forwarded to Lockhart Morris ("Second Dispute").

43.     The Second Dispute reiterated why the information being reported was unreliable, inaccurate, and/or misleading while also adding supporting documentation such as a Physician Certification of Total & Permanent Disability.

44.     Based on information and belief, this same disputed account has been viewed by one or more third parties in connection with applications for credit, account reviews, and other permissible purposes under the FCRA.

45.     On July 14, 2025, Plaintiff applied for credit with Space Coast Credit Union, but was denied based on a report by Experian.

46.     Lockhart Morris and the CRAs have been reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties ("Inaccurate Information") after being put on notice of such inaccuracies in written disputes.

## COUNT I – VIOLATIONS OF 15 U.S.C. §1681s-2(b)
## AGAINST LOCKHART MORRIS

47.     Plaintiff incorporates by reference paragraphs 1 - 46 as if fully stated herein.

48.     Lockhart Morris is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

49.     Lockhart Morris violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's Initial Dispute when it failed to review all relevant information provided by the CRAs.

50.     Additionally, Lockhart Morris violated §1681s-2(b) by failing to accurately respond or completely failing to respond to Plaintiff's Second Dispute sent to the CRAs.

51.     As a result of Lockhart Morris's violations of the FCRA, Plaintiff has been damaged.

52.     Plaintiff's damages include damages for emotional distress associated with the Lockhart Morris account not being corrected, credit denials, credit being granted at increased rates as a result of the account being viewed by credit grantors, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

53.     Lockhart Morris negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

54.     Additionally, Lockhart Morris committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

55.     Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Lockhart Morris in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT II - VIOLATIONS OF 15 U.S.C. §1692e(8) AGAINST LOCKHART MORRIS

56.     Plaintiff incorporates by reference paragraphs 1 – 46 as if fully stated herein.

57.     A "debt collector" violates 15 U.S.C. §1692e(8) by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

58.     Lockhart Morris violated §1692e(8) when it communicated false credit information to the CRAs by stating Plaintiff owed $2,500 to Western Express, Inc. despite telling him to seek employment elsewhere when he requested an accommodation for his physical condition.

59.     Each month that Lockhart Morris communicated false credit information regarding Plaintiff constitutes a violation of §1692e(8).

60.     Additionally, Lockhart Morris has violated §1692e(8) each time the false credit information was viewed by a third party in connection with an account review, offer of credit, or application of credit.

61.     The FDCPA is a strict liability statute and accordingly Lockhart Morris's conduct need not have been intentional, Lockhart Morris's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

62.     Lockhart Morris's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id.*at 1194 (stating "[t]he fact that a false statement may be

obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

63.     Lockhart Morris, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(8).

64.     15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

65.     As a result of Lockhart Morris's violations, Plaintiff has suffered damages including but not limited to, credit denials time spent addressing Defendant's illegal collection practices, misrepresentation of an amount to a third party, damage to her reputation for credit worthiness, an inaccurate credit report, a higher interest rate on credit she has been approved for, and emotional distress because of Lockhart Morris's actions or inactions.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against Lockhart Morris for:

a.     Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

b.     Attorneys' fees, litigation expenses and costs of the instant suit; and

c.     Such other or further relief as the Court deems proper.

## JURY DEMAND

66.     Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**DEBT SHIELD LAW**
*/s/ Kevin Rajabalee, Esq.*
Fla. Bar. No. 119948

10

3440 Hollywood Blvd., Suite 415
Hollywood, FL 33021
Main: 754-800-5299
Direct: 954-667-3096
Fax: 305-503-9457
kevin@debtshieldlaw,com
dayami@debtshieldlaw.com
service@debtshieldlaw.com
*Attorney for Plaintiff*